IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:11-CR-83-D
No. 7:16-CV-142-D

| | | |
|---|---|---|
| WILLIS SARVIS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

Willis Sarvis ("Sarvis" or" petitioner") seeks relief under 28 U.S.C. § 2255 and contends that his defense counsel were constitutionally ineffective in advising him about whether to plead guilty or proceed to trial [D.E. 134, 141, 163]. On March 1, 2019, the court held an evidentiary hearing concerning this claim [D.E. 177, 179]. The court has evaluated the record, the evidence, and the credibility of the witnesses. As explained below, defense counsel provided constitutionally effective advice to Sarvis. Alternatively, Sarvis has not proven prejudice. Accordingly, the court denies Sarvis's section 2255 motion and denies a certificate of appealability.

I.

On July 14, 2011, a federal grand jury in the Eastern District of North Carolina indicted Sarvis for distributing a quantity of phencyclidine (count one), being a felon in possession of a firearm (count two), and possessing a firearm in furtherance of a drug-trafficking crime (count three) [D.E. 1]. Sarvis's offense conduct included murdering another drug dealer and firing an assault rifle into nearby residences. See Presentence Investigation Report ("PSR") [D.E. 85] ¶¶ 6–9.

On August 4, 2011, Assistant Federal Public Defender ("AFPD") Cindy Bembry filed her notice of appearance on Sarvis's behalf [D.E. 13]. AFPD Bembry reviewed the discovery both independently and with Sarvis. See [D.E. 182] 30–31. AFPD Bembry then advised Sarvis about his options and the likely outcomes of particular courses of action, such as pleading guilty or going to trial. See id. at 31.

At the evidentiary hearing on March 1, 2019, AFPD Bembry identified Government's Exhibit 1 as the cover letter of August 16, 2011, from AUSA Wilson and a proposed plea agreement from the United States. See id. at 31; Gov't Ex. 1. AFPD Bembry reviewed the proposed plea agreement with Sarvis paragraph by paragraph to ensure that Sarvis understood the terms of the proposed agreement, including its waiver of appellate rights and the statutory penalty ranges. See [D.E. 182] 31–32. Under the proposed plea agreement, Sarvis faced up to 10 years' imprisonment on count two (without the enhanced penalties under the Armed Career Criminal Act) and up to consecutive life imprisonment on count three. See id. at 32–33; Gov't Ex. 1.

Sarvis did not want to plead guilty to count three and directed AFPD Bembry "to go back to the prosecutor to see if [she] could basically negotiate that . . . out of the plea agreement." [D.E. 182] 33. AFPD Bembry attempted to renegotiate the plea agreement as Sarvis directed, but AUSA Wilson "basically said that the plea is what it is." Id. The United States made no other plea offer to Sarvis while AFPD Bembry represented Sarvis. See id. at 36–37.

On February 6, 2012, AFPD Bembry met with Sarvis and discussed the case with Sarvis. AFPD Bembry discussed Sarvis's serious criminal history with Sarvis and how that criminal history would increase his advisory guideline range. See id. at 34–35; PSR ¶¶ 14–15, 16, 22, 23, 24. AFPD Bembry could not recall her exact estimate of Sarvis's advisory guideline range, but agreed that she probably assumed a reduction in Sarvis's base offense level for acceptance of responsibility if Sarvis

2

pleaded guilty to all three counts. See [D.E. 182] 34–35. During that meeting, Sarvis asked AFPD Bembry about a potential guilty plea to counts one and two with cooperation language. See id. at 36–38; Gov't Ex. 3. Sarvis also told AFPD Bembry that he did not want to plead guilty to the 18 U.S.C. § 924(c) charge in count three. See [D.E. 182] 36–38; Gov't Ex. 3.

On February 8, 2012, AUSA Wilson told AFPD Bembry that the United States only would offer Sarvis a plea agreement with him pleading guilty to counts two and three. See [D.E. 182] 36–38; Gov't Ex. 3. On February 11, 2012, AFPD Bembry met with Sarvis to convey the offer. See Gov't Ex. 3. Sarvis rejected the offer, however, and decided to plead guilty to count two without a plea agreement and to go to trial on counts one and three. See [D.E. 182] 36–38; Gov't Ex. 3; see also Gov. Ex. 2 (email exchange between AUSA Wilson and AFPD Bembry regarding Sarvis's guilty plea to count two).

On February 21, 2012, Sarvis pleaded guilty to count two and not guilty to counts one and three [D.E. 23, 25]. As part of Sarvis's guilty plea to count two, the court advised Sarvis about the charges and penalties for each count, all the rights that Sarvis had under the Constitution and laws of the United States, and the rights that he would give up if he pleaded guilty to count two. See [D.E. 25] 4–14.

On July 27, 2012, AFPD Bembry moved to withdraw as counsel [D.E. 41]. On July 30, 2012, the court granted AFPD's Bembry's motion to withdraw [D.E. 42].

On August 2, 2012, Attorney Robert Edward Nunley ("Attorney Nunley") filed his notice of appearance on Sarvis's behalf [D.E. 43]. At the evidentiary hearing, Attorney Nunley testified that his legal practice in 2012 and 2013 primarily consisted of representing defendants accused of serious felonies, but that he also served as appointed counsel through the CJA panel in the Eastern District of North Carolina. See [D.E. 182] 48–49. When Attorney Nunley entered his notice of

3

appearance, the court had set the trial on counts one and three for the October 2012 term. See id. at 49–50. After being appointed, Attorney Nunley reviewed as much information about the case as possible, including the discovery and the pretrial services report. See id. at 50–51.

Attorney Nunley did not seek to reopen the August 2011 plea offer because Sarvis already had pleaded guilty to count two. See id. at 65–66. Nonetheless, Attorney Nunley discussed with Sarvis whether Sarvis still wanted to proceed to trial on counts one and three. See id. at 51–52. As part of this discussion, Attorney Nunley sought to dispel any misconceptions that Sarvis had about federal court based on Sarvis's experiences in state court, including that "there is no certainty as to what your sentence would be if you take a plea agreement." Id. at 51. Attorney Nunley told Sarvis that Sarvis would be classified as a career offender at sentencing, reviewed with Sarvis his likely advisory guideline range, and forecasted that a conviction on count three (whether after a trial or a guilty plea) would probably mean a life sentence. Attorney Nunley testified:

> So I told him in my estimation that based on conduct that I saw in the discovery, based on his criminal history, based on who the judge was, it was my estimation that if he were to plead guilty, because of the cross-reference that's available for murder based on the 924(c), he would be looking most likely at a life sentence if he pled guilty. And if he was convicted [at trial], he would certainly get a life sentence.

Id. 52; accord id. at 54 ("And for me, given the cross-reference, given the facts, given the judge, I told him, 'Most likely, if you were to plead guilty, you will receive a life sentence. If you go to trial, you will certainly receive a life sentence.'"); id. at 71 (explaining his professional opinion that the court would impose a life sentence on the § 924(c) charge and that it "was important for [Sarvis] to understand that").

Based on Attorney Nunley's first two meetings with Sarvis, Attorney Nunley understood that Sarvis "was very eager to have a motion to suppress filed" and "wanted to pursue a trial." Id. at 53. In order to comply with Sarvis's decisions, on September 3, 2012, Attorney Nunley asked the court

4

to reopen the pretrial motions period and continue the trial date [D.E. 45]. On September 7, 2012, the court reopened the pretrial motion period and continued the trial [D.E. 46]. On September 17, 2012, Attorney Nunley moved to suppress evidence [D.E. 47]. On November 5, 2012, the court held a hearing and denied the motion to suppress [D.E. 52].

After the court denied Sarvis's motion to suppress, Attorney Nunley unsuccessfully explored the possibility of a conditional plea agreement with AUSA Wilson in order to preserve Sarvis's right to appeal the court's denial of the motion to suppress. See id. at 54–55, 65–66. AUSA Wilson would not agree to a conditional guilty plea. See id. Attorney Nunley also told Sarvis that a guilty plea would prevent him from appealing the suppression ruling. Cf. Tollett v. Henderson, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to entry of the guilty plea."). Sarvis was "very firm" with Attorney Nunley that pleading guilty to the section 924(c) charge in count three "was never an option" because of the likelihood of a life sentence and because Sarvis wanted to preserve his right to appeal the court's suppression ruling. [D.E. 182] 54–55.

Attorney Nunley and Sarvis also discussed the impending trial. See id. at 55–56. Attorney Nunley offered Sarvis no assurances on the likelihood of succeeding at trial:

> [W]hen I told him we would be arguing self-defense, it was in the context of what I call imperfect [self-defense], and I never told him anything about certainty. In fact, I don't believe I would exceed ten percent. I believe that's the figure I used with him was, "You have less than a ten percent chance of winning if we go to trial. But if you take a plea, it's my best estimation with Judge Dever on these facts and with your record, you're going to receive a life sentence. You'll never get out."

Id. at 56. Attorney Nunley described his theory on count three as "imperfect self-defense" because Sarvis, having involved himself in a felony drug transaction in count one, could not argue self-

5

defense as a lawful affirmative defense to count three. See id. at 56–57. At trial, Attorney Nunley's strategy was to persuade the jury that the drug transaction in count one was separate from the firearm possession and shooting in count three. See id. at 57–59. This effort to separate the drug transaction in count one and the firearm in count three comported with how Sarvis always explained his conduct to Attorney Nunley. See id. at 59–60.

With Sarvis's consent, Attorney Damon Chetson ("Attorney Chetson"), who was on the CJA training panel, assisted Attorney Nunley with Sarvis's defense. See id. at 60–61. From time to time, Attorney Chetson sent e-mails to Attorney Nunley that became part of the case file. See id. at 61. On January 8, 2013, Attorney Chetson e-mailed Attorney Nunley. See Gov't Ex. 5. The email included the following summary of a meeting between Sarvis and his attorneys:

> You apprised Willis of his very low chances for a not-guilty verdict at trial. We discussed the fact that he has already pled guilty to Felon in Possession of Firearm. Specifically, you told him that there was a very high likelihood that he would be convicted of the remaining charges given that his confession would now be heard by the jury (following Judge Dever's ruling on the Suppression Motion).
>
> You indicated that we were proceeding to trial for two reasons. The government has not permitted us to enter a conditional plea on his behalf that would preserve his appellate rights on the suppression motion. The government has not agreed to take the 924(c) off the table, and in doing so, you indicated to him, that he is eligible for a life sentence following a guilty plea. You indicated that it was your understanding that, even if the government did offer a conditional plea, Willis would not agree to plead guilty without the 924(c) being taken off the table because of the likelihood that he would be sentenced to life pursuant to such a plea.
>
> Sarvis said that he understands that there is a very low likelihood that he will not be convicted at trial. He said that he wishes to preserve his appellate rights (which he referred to as "my motion to suppress,") and understands that, given that there's no statutory cap on the sentence, even after a plea given the facts, there is a significant likelihood that he would be sentenced to life[.]

Id. at 3. The emailed comported with Attorney Nunley's recollection of his meeting with Sarvis and Attorney Chetson. See [D.E. 182] 62.

6

> Attorney Nunley appreciated the importance of the suppression motion:
>
>> Had I won on the suppression motion, the person who admitted six times during his confession on videotape would have walked because the seizure of the gun would have been illegal as fruits of the poisonous tree. His confession would have been knocked out, and other than word on the street that Sarvis was the one who did it because there was a hit out on Sarvis, there wouldn't have been any other evidence against him.

Id. at 62–63. Sarvis also appreciated the affect that Sarvis's videotaped confession would have on the jury and the importance of not waiving his right to appeal the court's ruling on the suppression motion. See id. at 63–64. Indeed, during Sarvis's trial, Sarvis wrote a letter to a female friend that explained why Sarvis elected trial: "My motive for the trial is for my appeal rights to where I'll come back on appeal because they violated my Constitutional rights, to detain me. So if push comes to shove I'll win my appeal." Gov't Ex. 4; see [D.E. 182] 63–64.

Attorney Nunley and Sarvis communicated effectively throughout the representation. See [D.E. 182] 66–67. Sarvis knew that he had no better than a 10% chance of succeeding at trial and the difference between perfect and imperfect self-defense. See id. "Sarvis never indicated to [Attorney Nunley] a willingness to plead to the 924(c)." Id. at 70. Rather, Sarvis told Attorney Nunley that he would "not plead to a 924(c)" and wanted to preserve his appellate rights. Id.

On January 14, 2013, Sarvis went to trial on counts one and three. See [D.E. 61]. On January 16, 2013, the jury convicted Sarvis on counts one and three. See [D.E. 69]. Attorney Nunley represented Sarvis at trial and continued to represent Sarvis until withdrawing on August 28, 2013. See [D.E. 92].

On November 15, 2013, the court held Sarvis's sentencing hearing [D.E. 115]. Attorneys Lewis Thompson and Susan Thompson represented Sarvis at sentencing. See id. at 1–2. Sarvis objected to the cross-reference in the PSR to second-degree murder, arguing that assault or voluntary

7

manslaughter would be more appropriate. See id. at 8. Sarvis also objected to not receiving a reduction for acceptance of responsibility, arguing that he pleaded guilty to count two and that he went to trial on counts one and three to preserve his right to appeal the adverse ruling on his suppression motion (as opposed to "contesting so much of the factual issues"). See id. at 8–9. The court overruled both objections and made detailed factual findings about Sarvis's egregious conduct. See id. at 12–18. Ultimately, the court calculated Sarvis's total offense level to be 38, his criminal history category to be VI, and his advisory guideline range on counts one and two to be 360 months to life (subject to statutory maximums) and on count three to be 60 month's consecutive to whatever sentences were imposed on counts one and two. See id. at 18–19.

After thoroughly considering all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Sarvis to 240 months' imprisonment on count one, 120 months' consecutive imprisonment on count two, and consecutive life imprisonment on count three. See id. at 31–37. The court detailed the extraordinarily serious nature of Sarvis's three offenses, the murder that animated count three, and Sarvis's lifelong commitment to perpetrating serious crimes. See id. at 32–35. The court explained: "Today, at long last, the people in Hill Crest, the people of Wilmington, the people in the Eastern District will be protected from Willis Sarvis for the rest of his natural life." Id. at 35.

Sarvis appealed [D.E. 106]. On February 4, 2015, the United States Court of Appeals for the Fourth Circuit affirmed the court's denial of Sarvis's suppression motion, Sarvis's conviction, and Sarvis's sentence. See United States v. Sarvis, 601 F. App'x 176, 178–81 (4th Cir. 2015) (per curiam) (unpublished).

II.

On June 9, 2016, Sarvis (proceeding pro se) filed a section 2255 motion [D.E. 134], which he later amended [D.E. 138, 139, 152]. Among other things, Sarvis alleged:

8

> In this case, the government offered Movant a reasonable plea. However, Movant instructed his counsel to thoroughly investigate the plea offer, but counsel informed Movant there was not time for such, counsel then unexpectedly withdrew from the case and new counsel was assigned.
>
> The replacement counsel, ultimately the trial counsel, informed and advised Movant to reject the plea because he could beat the case under the doctrine of "self defense."

[D.E. 152-1] 26. In his memorandum in support, Sarvis claims that AFPD Bembry advised him "that the Government had offered him a plea agreement calling for between 200 and 300 months imprisonment in exchange for his guilty plea to the indictment" and that he asked her "whether the Government's imprisonment range was guaranteed." [D.E. 141-1] 8–9. Sarvis claims that AFPD Bembry informed him that she had not discussed the parameters of the proposed plea agreement in detail with the government. See id. Sarvis also claims that he asked AFPD Bembry to follow up with the government on the details, but that AFPD Bembry said she "had no time to investigate all of [his] concerns because she was swamped with preparing for trial." Id.

As for Attorney Nunley, Sarvis alleges that Attorney Nunley was aware of the plea offer and recommended that he not take it because 200 to 300 months' imprisonment "was too much for Defendant's situation where Defendant was only defending himself when he (Defendant) shot and Mr. Jenkins, resulting in Mr. Jenkins' death." Id. According to Sarvis, Attorney Nunley forecasted "a good chance of avoiding a conviction" on count three because the evidence supported Sarvis's self-defense theory. Id. Sarvis claims that had he known he did not have a viable claim of self-defense and would receive a life sentence on count three after going to trial, he "would have accepted the Government's initial plea offer which excluded a life sentence." Id. at 9–10.

On August 1, 2017, the court dismissed all of Sarvis's claims in his section 2255 motion except "his ineffective-assistance claim concerning trial counsel's alleged advice concerning an alleged plea offer." [D.E. 154] 1. On September 12, 2017, Sarvis moved to amend his section 2255

9

motion and for reconsideration [D.E. 155]. On October 5, 2018, the court denied Sarvis's motion for reconsideration and ordered an evidentiary hearing on Sarvis's ineffective assistance of counsel claim because "genuine issues of material facts exist concerning trial counsel's alleged advice concerning an alleged plea agreement." [D.E. 161] 4.[1]

III.

On March 1, 2019, the court held an evidentiary hearing on the one remaining claim [D.E. 182]. At the hearing, Sarvis, AFPD Bembry, and Attorney Nunley testified. See id. at 3–71. The court also received into evidence eight government exhibits.

On direct examination at the evidentiary hearing, Sarvis testified that AFPD Bembry told him about a "reasonable plea" offer of 200 to 300 months. See id. at 4–6. Sarvis believed the offer to be reasonable because he "committed the crime" but "[a]t the same time didn't know that [the crime] had been that severe and [he would receive] a life sentence." Id. at 5. Sarvis said that he never saw the plea agreement and that he did not review its terms, other than "the number of 200 and some months to 300 and some months[,]" with AFPB Bembry. Id. at 5–7.

During direct examination, Sarvis reviewed a letter dated August 16, 2011, from AUSA Wilson to AFPD Bembry and a proposed memorandum of plea agreement in which Sarvis would plead guilty to counts two and three of the indictment. See id. at 7–8; Gov. Ex. 1. Sarvis testified that AFPD Bembry never showed him the proposed plea agreement. See [D.E. 182] at 8, 11–12. Sarvis also testified that he and AFPD Bembry never really "spoke [about]" trial issues, including the relationship between pleading not guilty and receiving acceptance of responsibility at sentencing.

---

[1] On October 5, 2018, the court appointed counsel to represent Sarvis in connection with the evidentiary hearing and Sarvis's remaining claim [D.E. 162].

Id. at 8–9. Sarvis and AFPD Bembry also disagreed on whether to move to suppress evidence. See id. at 9–10.

According to Sarvis, he asked AFPD Bembry "to negotiate further with respect to the plea agreement," and was concerned about receiving sentencing enhancements. Id. at 10–11. Sarvis did not believe that he had enough information about the plea offer to make a decision when he and AFPD Bembry discussed it. See id. at 11. The United States Attorney, however, refused to negotiate further with AFPD Bembry concerning the plea agreement. Cf. id. at 33.

On February 21, 2012, Sarvis pleaded guilty without a plea agreement to count two (i.e., the 18 U.S.C. § 922(g) count). See [D.E. 23]; Rule 11 Tr. [D.E. 25] 13–14. As for his guilty plea to count two, at the March 1, 2019, evidentiary hearing Sarvis testified to the following: "I wanted to accept responsibility for what I did, and I know that I had the firearm." [D.E. 182] 12. As to counts one and three, Sarvis pleaded not guilty. See Rule 11 Tr. at 13–14.

On August 2, 2012, Attorney Nunley entered his notice of appearance [D.E. 43]. According to Sarvis, Attorney Nunley told him to reject the government's plea offer "because he could beat the case under the doctrine of self-defense." [D.E. 182] 13. Sarvis also claimed that Attorney Nunley explained to him "that either way I go, I'm gonna get a life sentence. So he stated that I'm gonna go up on trial and reserve my appeal rights." Id.; accord at 15 ("He basically said that I didn't really have an option because the plea would be a life sentence. He said I'm better off going to trial and preserving my rights. . . . I would receive a life sentence either way I go, so he said I'm better off to use my appeal rights."). Sarvis accepted this advice based on Attorney Nunley's confidence that Sarvis could prevail at trial and Sarvis's belief that he had nothing to lose. See id. at 13–15. According to Sarvis, Sarvis never told Attorney Nunley that he "would not accept a plea that included the 924 charge." Id. at 16.

11

On cross-examination, Sarvis acknowledged that this case was the first time he faced federal charges and that in state court, he always had been able to plead a charge down to a lesser charge. See id. at 16–18. From Sarvis's perspective and based on his experience, the deal that he was offered to plead guilty to counts two and three "wasn't a good deal." Id. at 18. Sarvis also believed the plea offer that AFPD Bembry discussed with him was to plead guilty to everything. See id. at 19. Sarvis said that he "was interested in pleading for everything," but that he "just wanted to do a motion for suppression hearing first." Id. at 20.

After Attorney Nunley entered his notice of appearance and spoke to Sarvis, Sarvis claimed that his outlook about pleading guilty changed because Attorney Nunley said he could beat the two remaining charges. See id. at 20. Sarvis also agreed that Attorney Nunley vigorously advanced arguments in support of the suppression motion, which the court ultimately denied. See id. at 21–22.

According to Sarvis, Attorney Nunley told Sarvis that the only way he could appeal this adverse suppression ruling and preserve his right to appeal would be go to trial. See id. at 22. Sarvis also claimed that Attorney Nunley did not discuss the August 2011 plea offer with him. See id. at 22; Gov. Ex. 1. In going to trial, Sarvis hoped that he would be able to "avoid being convicted of a charge that carried life imprisonment." [D.E. 182] 23. Sarvis understood that if he elected trial there was a small chance he might win on count three, but that he could life imprisonment even if he pleaded guilty to count three or went to trial on count three and lost. See id. at 24.

IV.

The court has considered the entire record and the credibility of the witnesses. In assessing the credibility of witnesses, a trial court may consider "variations in demeanor and tone of voice." Anderson v. Bessemer City, N.C., 470 U.S. 564, 575 (1985). A trial court also may consider whether documents and objective evidence comport with a witness's testimony. See id.; Jackson

12

v. United States, No. 5:07-CR-110-FL-1, 2014 WL 7149635, at *4 (E.D.N.C. 2014) (unpublished), appeal dismissed, 610 F. App'x 241 (4th Cir. 2015) (per curiam) (unpublished). Additional considerations include the witness's motive to lie and the specificity of a witness's statement. See e.g., United States v. Wilson, 624 F.3d 640, 665 (4th Cir. 2010); Jackson, 2014 WL 7149635, at *4.

"The Sixth Amendment entitles criminal defendants to the effective assistance of counsel—that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." Bobby v. Van Hook, 558 U.S. 4, 7 (2009) (per curiam) (quotations omitted). The Sixth Amendment right to counsel extends to all critical stages of a criminal proceeding, including plea negotiations, trial, sentencing, and appeals. See, e.g., Missouri v. Frye, 566 U.S. 134, 140–47 (2012); Lafler v. Cooper, 566 U.S. 156, 162–65 (2012); Glover v. United States, 531 U.S. 198, 203–04 (2001). To state a claim of ineffective assistance of counsel in violation of the Sixth Amendment, Sarvis must show that his attorney's performance fell below an objective standard of reasonableness and that he suffered prejudice as a result. See Strickland v. Washington, 466 U.S. 668, 687–96 (1984).

When determining whether counsel's representation was objectively unreasonable, a court must be "highly deferential" to counsel's performance and must attempt to "eliminate the distorting effects of hindsight." Id. at 689. Therefore, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. A party also must show that counsel's deficient performance prejudiced the party. See id. at 691–96. A party does so by showing that there is a "reasonable probability" that, but for the deficiency, "the result of the proceeding would have been different." Id. at 694.

In 2012, the Supreme Court addressed the standard for showing ineffective assistance of counsel during plea bargaining. See Missouri v. Frye, 566 U.S. 134 (2012); Lafler v. Cooper, 566

13

U.S. 156 (2012). In Lafler, the Court held that the Sixth Amendment right to counsel applies to plea bargaining and that prejudice occurs when, absent deficient advice, the defendant would have accepted a plea that would have resulted in a less severe conviction, sentence, or both. See Lafler, 566 U.S. at 162–64. In Frye, the Court held that the Sixth Amendment requires defense counsel to communicate any plea offer from the government to the defendant. See Frye, 566 U.S. at 145.

"[A] court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." Strickland, 466 U.S. at 695. When analyzing a section 2255 claim for ineffectiveness assistance of counsel, a court may rely on its own familiarity with the case. See Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977); United States v. Dyess, 730 F.3d 354, 359–60 (4th Cir. 2013). In a section 2255 proceeding, the petitioner must prove his claim by a preponderance of the evidence. See, e.g., Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958) (per curiam); Diaz v. United States, Nos. 7:09–CR–100–D, 7:11–CV–43–D, 2014 WL 7384974, at *3 (E.D.N.C. Dec. 29, 2014) (unpublished); Toribio-Ascenio v. United States, Nos. 7:05-CR-97-FL, 7:08-CV-211-FL, 2010 WL 4484447, at *2 (E.D.N.C. Oct. 25, 2010) (unpublished).

With these standards in mind, the court finds that AFPD Bembry and Attorney Nunley were credible witness, and the court credits their testimony. Sarvis was not a credible witness, especially insofar as Sarvis's testimony contradicted the testimony of AFPD Bembry and Attorney Nunley, and the court does not credit his testimony. The court credits AFPD Bembry's testimony that she advised Sarvis of the government's August 2011 plea offer, reviewed the proposed plea agreement with Sarvis paragraph by paragraph (including the applicable statutory maximum penalties), provided Sarvis with her best estimate of his advisory guidelines range, and discussed Sarvis's options of pleading guilty without a plea agreement, pleading guilty to counts two and three pursuant to the proposed plea agreement, or pleading not guilty and proceeding to trial on some or all of the charges.

The court also credits AFPD Bembry's testimony that Sarvis was not willing to plead guilty to count three because a conviction on count three exposed him to the possibility of life imprisonment.

The court credits Attorney Nunley's testimony that he advised Sarvis that the court would impose a life sentence on count three regardless of whether Sarvis pleaded guilty to count three or was convicted at trial on count three, but that Attorney Nunley was even more confident the sentence on count three would be life imprisonment if Sarvis were convicted on count three at trial. The court also credits Attorney Nunley's testimony that Sarvis understood that, while a successful outcome at trial on counts one and three was possible, it was unlikely (i.e., less than a 10% chance). Attorney Nunley credibly explained that Sarvis understood that an unconditional guilty plea on count three would waive his right to appeal the court's denial of his suppression motion and that Sarvis was unwilling to waive his appellate rights. Attorney Nunley and Sarvis also knew that a favorable ruling on the motion to suppress would have significantly weakened the government's case against Sarvis.

AFPD Bembry and Attorney Nunley did not render ineffective assistance of counsel concerning their advice to Sarvis whether to plead guilty or go to trial. Sarvis always maintained that he was innocent of count three and would not plead guilty to count three. "Although a defendant's proclamation of innocence does not relieve counsel of his normal responsibilities under Strickland, it may affect the advice counsel gives." Burt v. Titlow, 134 S. Ct. 10, 17 (2013). The "reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statement or action." Strickland, 466 U.S. at 691. "Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant on information supplied by the defendant." Id. Moreover, a criminal defendant has "ultimate authority" to decide whether to plead guilty. Florida v. Nixon, 543 U.S. 175, 187 (2004) (quotation omitted); see Gonzalez v. United States, 553 U.S. 242, 250–51 (2008); Jones v. Barnes, 463 U.S. 745, 751 (1983); United

15

States v. Chapman, 593 F.3d 365, 368 (4th Cir. 2010). A lawyer cannot "override his client's desire . . .to plead not guilty." Brookhart v. Janis, 384 U.S. 1, 7–8 (1966).

AFPD Bembry's and Attorney Nunley's advice fits comfortably within the wide range of professional competent assistance. See Strickland, 466 U.S. at 691. Each attorney reviewed with Sarvis the options that Sarvis had available to him at the time, ensured that Sarvis understood his potential sentencing exposure, and unsuccessfully explored whether the government would offer a plea agreement palatable to Sarvis. When Sarvis chose to reject the proposed plea agreement, plead guilty to count two, and go to trial on counts one and three, Sarvis fully appreciated the consequences of his decisions and believed that he was innocent of count three. Sarvis knew that his chance of avoiding a conviction on counts one and three at trial were slim; however, Sarvis believed that a slim chance was better than no chance and Sarvis wanted to preserve his right to appeal the suppression ruling. Sarvis's decision to go to trial was a reasonable strategic decision, and Sarvis cannot rewrite history by attempting to characterize the advice he received as something that it was not.

Alternatively, Sarvis has not proven prejudice under Strickland and its progeny. See Frye, 566 U.S. at 147 ("To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendant[] must demonstrate a reasonable probability [he] would have accepted the earlier plea offer had [he] been offered effective assistance of counsel."); Lafler, 566 U.S. at 163 ("In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice."). The court does not credit Sarvis's claim that he would have signed the government's August 2011 plea agreement with the proper advice. In making this finding, the court notes that Sarvis consistently maintained that the firearm in count three did not further the drug-trafficking offense in count one and that he would not plead guilty to count three. Sarvis was never willing to plead guilty to count

16

three and expose himself to life imprisonment. Furthermore, Sarvis always desired to appeal the court's adverse ruling on his suppression motion. Thus, Sarvis has not proven prejudice. See Frye, 566 U.S. at 147; Lafler, 566 U.S. at 163–64; Stickland, 466 U.S. at 691–96; Merzbacher v. Shearin, 706 F.3d 356, 366–68 (4th Cir. 2013).

Alternatively, even if Sarvis had entered into the proposed plea agreement, and for the reasons detailed during Sarvis's sentencing hearing, the court would have imposed a life sentence on count three to ensure that Sarvis would spend the remainder of his natural life in the custody of the Bureau of Prisons. Thus, Sarvis has not proven prejudice.

After reviewing the claims presented in Sarvis's motion, the court finds that reasonable jurists would not find the court's treatment of Sarvis's claims debatable or wrong and that the claims do not deserve encouragement to proceed further. Accordingly, the court denies a certificate of appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000).

V.

In sum, the court DENIES petitioner's section 2255 claim [D.E. 134, 141, 163] and DENIES a certificate of appealabilty. The clerk shall close the case.

SO ORDERED. This 22 day of July 2019.

JAMES C. DEVER III
United States District Judge

17